IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN LEWIS, JR., )<br>      Plaintiff      )<br>)<br>v    )<br>)<br>WEXFORD HEALTH SOURCES,  )<br>INC., et al.,    )<br>      Defendants    ) | C.A. No. 16-88 Erie<br><br>Magistrate Judge Baxter |

## MEMORANDUM OPINION[1]

United States Magistrate Judge Susan Paradise Baxter

### I. INTRODUCTION

#### A. Relevant Procedural History

On April 19, 2016, Plaintiff John Lewis, Jr., an inmate incarcerated at the State Correctional Institution at Albion, Pennsylvania ("SCI-Albion"), initiated this civil rights action by filing a complaint pursuant to 42 U.S.C. § 1983. Plaintiff subsequently filed an amended complaint on September 7, 2016, which superseded the original complaint and is the operative pleading in this case. [ECF No. 21]. Named as Defendants are: Wexford Health Sources, Inc. ("Wexford"), a medical provider that was under contract with the Commonwealth of Pennsylvania to provide medical services to inmates at SCI-Albion from on or about January 1, 2013 through on or about July 8, 2015; Correct Care Solutions, LLC ("CCS"), a medical provider that has been under contract with the Commonwealth of Pennsylvania to provide medical services to inmates at SCI-Albion since on or about July 9, 2015; and Robert L. Maxa, D.O.

---
[1] All parties have consented to having a United States Magistrate Judge exercise jurisdiction over this matter. [ECF Nos. 16, 18].

("Maxa"), a medical doctor who has been employed by both Wexford and CCS to provide medical services to inmates at SCI-Albion.

Plaintiff's amended complaint contains three counts: Count I is an Eighth Amendment claim of deliberate indifference to serious medical needs asserted against Defendant Maxa; Count II is a pendent state law professional negligence claim against all Defendants; and Count III is a pendent state law breach of contract claim against Defendants Wexford and CCS.

On September 28, 2016, Defendants filed a partial motion to dismiss [ECF No. 22], seeking dismissal of Counts I and III of the amended complaint, only, arguing that each Count fails to state a cause of action upon which relief may be granted. Plaintiff has since filed a brief in opposition to Defendants' motion [ECF No. 25], in which he voluntarily withdraws Count III of his amended complaint, but argues that Count I adequately states an Eighth Amendment claim of deliberate indifference to serious medical needs. This matter is now ripe for consideration.

### B.     Relevant Factual History

Prior to his incarceration, Plaintiff was involved in a motorcycle accident that caused him to suffer severe spinal injuries that required four neck and back surgeries, as a result of which he was rendered disabled (ECF No. 21, Amended Complaint, at ¶ 15). Plaintiff's surgeon referred him to the Hershey Medical Center Pain Management Clinic where he was prescribed Methadone and Soma to manage his chronic pain symptoms (Id. at ¶ 16). Thereafter, Plaintiff's primary care physician, Larien G. Bieber, MD, continued to treat Plaintiff's chronic pain with Methadone and Soma (Id. at ¶ 17).

On June 26, 2012, after Plaintiff was incarcerated at SCI-Albion, Dr. Bieber sent a letter

to Defendant Maxa informing him that Plaintiff's pain was being managed with chronic stable Methadone therapy, and Plaintiff alleges that he was continued on Methadone and Soma while at SCI-Albion until March 21, 2014, when he was transferred to SCI-Camp Hill on a writ (Id. at ¶¶ 18-19, 21). For reasons unknown to Plaintiff, his prescriptions for Methadone and Soma were discontinued while he was at SCI-Camp Hill from March 21, 2014 to April 8, 2014, when he was transferred back to SCI-Albion (Id. at ¶ 20).

Upon his return to SCI-Albion on April 8, 2014, Plaintiff submitted an inmate request to Defendant Maxa asking that his prescriptions for Methadone and Soma be re-ordered because he was in a lot of pain (Id. at ¶ 22). Defendant Maxa allegedly responded that all narcotics and muscle relaxers required the approval of the Regional Medical Director (Id.). On April 17, 2014, Plaintiff was assessed by Defendant Maxa as having chronic neck pain, which Defendant Maxa planned to treat with nonsteroidal anti-inflammatory drugs ("NSAID") and Elavil. In addition, Defendant Maxa indicated that he would have Plaintiff try Robaxin, a muscle relaxant, for two weeks (Id. at ¶ 24). On April 20, 2014, Plaintiff wrote to Defendant Maxa complaining about not having appropriate pain medication, but Defendant Maxa responded that he could no longer get Soma and was weaning people off narcotics daily. Accordingly, he wrote Plaintiff a prescription for Relafin, an NSAID, because Celebrex, another NSAID, was unavailable (Id. at ¶ 25).

On May 4, 2014, Plaintiff sent another request to Defendant Maxa stating that the Relafin was not working and complaining that he couldn't sleep or cope with his everyday activities because he was in so much pain (Id. at ¶ 26). On May 12, 2014, Plaintiff was seen by Defendant Maxa for a follow-up on his chronic neck pain, but Defendant Maxa refused to prescribe any narcotic medication (Id. at ¶ 28). On May 27, 2014, Plaintiff sent an inmate request to Defendant

3

Maxa complaining that he was suffering "physically and mentally" and asking to be put back on Methadone and Soma twice daily (Id. at ¶ 29). On May 30, 2014, Defendant Maxa responded that Plaintiff was on his "call out" (Id. at ¶ 30). Plaintiff was next seen by Defendant Maxa on July 17, 2014, to follow up on Plaintiff's chronic neck pain and to discuss his request for Methadone and Soma, which Plaintiff had not had since March 21, 2014 (Id.). Defendant Maxa observed that Plaintiff exhibited "no changes from prior exams" and again refused to prescribe any narcotic medication for Plaintiff's chronic pain.

On May 20, 2015, Plaintiff sent a request to Defendant Maxa asking that he prescribe Methadone and Soma for his chronic pain (Id. at ¶ 32). Defendant Maxa responded on May 26, 2015, that "We have already discussed this and they are not going to be reviewed at this time" (Id. at ¶ 33).

### C.     Standard of Review

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). See also Ashcroft v. Iqbal, 556 U.S. 662, 678 (May 18, 2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

The Court need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp.,

394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). See also McTernan v. City of York, Pennsylvania, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). A Plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556, citing 5 C.Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004). Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D.Del. February 19, 2008) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556.

The Third Circuit subsequently expounded on the Twombly/Iqbal line of cases:

> To determine the sufficiency of a complaint under Twombly and Iqbal, we must take the following three steps:
>
> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) quoting Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).

## II.     DISCUSSION

Defendants argue that Plaintiff's allegations are insufficient to state a cognizable Eighth Amendment claim of deliberate indifference to a serious medical need.

In the medical context, a constitutional violation under the Eighth Amendment occurs only when prison officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). "In order to establish a violation of [the] constitutional right to adequate medical care, evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need[2] involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S at 104. Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury" White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

Mere misdiagnosis or negligent treatment is not actionable as an Eighth Amendment

---

[2] A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Correction Institute Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted). Any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional judgment. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979), quoting Bowring v. Goodwin, 551 F.2d 44, 48 (4th Cir. 1977).

Here, there is no dispute that Plaintiff has sufficiently alleged a serious medical need. Thus, the only question is whether Plaintiff has sufficiently alleged deliberate indifference to his medical needs. Defendants contend that Plaintiff has failed to do so because he is merely disagreeing with Defendants' decision to substitute other medications for his previously prescribed narcotic pain medications, Methadone and Soma, which fails to state an actionable Eighth Amendment claim of deliberate indifference. See, e.g., Gause v. Diguglieilmo, 339 Fed. Appx. 132 (3d Cir. 2009) (holding that dispute over choice of medication does not rise to the level of an Eighth Amendment violation); Young v. Quinlan, 960 F.2d 351, 358 n. 18 (3d Cir. 1992) (finding that mere disagreements over medical judgment do not state Eighth Amendment claims); Pierce, 612 F.2d at 762.

However, Plaintiff's claim is not simply premised on a dispute over Defendants' choice of pain medication. Rather, Plaintiff's claim is based on the broader issue of Defendants' failure to provide specialty care for his chronic pain. Specifically, Plaintiff alleges that "pain medicine" is recognized as a "specialty" in the DOC's contract with both Defendant Wexford and Defendant CCS, and Defendant Maxa is not a specialist in the treatment of chronic pain. (ECF No. 21, Amended Complaint, at ¶¶ 37-38). Plaintiff alleges further that, as of July 9, 2015, the multiyear

contract between CCS and the DOC provides that CCS "will establish an on-site specialty clinic, through a 'telehealth' connection with an appropriate medical subcontractor in person, when a minimum of six inmates exist who also need 'pain medicine.'" (Id. at ¶ 39). Although SCI-Albion allegedly houses at least six inmates who require "pain medication," Plaintiff alleges that Defendants have failed to provide a specialty clinic for inmates with chronic pain. (Id. at ¶¶ 40-41). Thus, Plaintiff contends that Defendants have been deliberately indifferent to Plaintiff's medical needs by denying him appropriate and necessary medical treatment "for non-medical reasons, i.e. cost," and by preventing him from having "access to a physician capable of evaluating the need for treatment." (ECF No. 25, Plaintiff's opposition brief, at p. 7).

The Court finds that the foregoing allegations are minimally sufficient to state an Eighth Amendment claim of deliberate indifference to Plaintiff's serious medical needs at the pleading stage. See Cooleen v. Lamanna, 248 Fed. Appx. 357, 360 (3d Cir. 2007) (citations omitted) (recognizing that deliberate indifference standard may be met where, *inter alia*, necessary treatment is delayed for nonmedical reasons, or an inmate is denied access to a physician capable of evaluating the need for treatment); Rouse v. Plantier, 182 F.3d 192, 17 (3d Cir. 1999) (finding deliberate indifference where prison officials continue a course of treatment they know is painful, ineffective, or entails a substantial risk of serious harm). Consequently, Defendants' motion to dismiss such claim will be denied.

An appropriate Order follows.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

contract between CCS and the DOC provides that CCS "will establish an on-site specialty clinic, through a 'telehealth' connection with an appropriate medical subcontractor in person, when a minimum of six inmates exist who also need 'pain medicine.'" (Id. at ¶ 39). Although SCI-Albion allegedly houses at least six inmates who require "pain medication," Plaintiff alleges that Defendants have failed to provide a specialty clinic for inmates with chronic pain. (Id. at ¶¶ 40-41). Thus, Plaintiff contends that Defendants have been deliberately indifferent to Plaintiff's medical needs by denying him appropriate and necessary medical treatment "for non-medical reasons, i.e. cost," and by preventing him from having "access to a physician capable of evaluating the need for treatment." (ECF No. 25, Plaintiff's opposition brief, at p. 7).

The Court finds that the foregoing allegations are minimally sufficient to state an Eighth Amendment claim of deliberate indifference to Plaintiff's serious medical needs at the pleading stage. See Cooleen v. Lamanna, 248 Fed. Appx. 357, 360 (3d Cir. 2007) (citations omitted) (recognizing that deliberate indifference standard may be met where, *inter alia*, necessary treatment is delayed for nonmedical reasons, or an inmate is denied access to a physician capable of evaluating the need for treatment); Rouse v. Plantier, 182 F.3d 192, 17 (3d Cir. 1999) (finding deliberate indifference where prison officials continue a course of treatment they know is painful, ineffective, or entails a substantial risk of serious harm). Consequently, Defendants' motion to dismiss such claim will be denied.

An appropriate Order follows.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: March 22, 2017